IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRENDA OSBORNE PAVIA,

                             Plaintiff,

      v.                              Civil Action No.
                                     5:10-CV-818 (GTS/DEP)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY & SHURTLIFF LLP          JAYA SHURTLIFF, ESQ.
300 S. State St., Ste. 520
Syracuse, NY 13202-2060

FOR DEFENDANT

HON. RICHARD S. HARTUNIAN       CHRISTOPHER BRACKETT, ESQ.
United States Attorney          Special Asst. U.S. Attorney
Northern District of New
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF COUNSEL REGION II     STEPHEN P. CONTE, ESQ.
Social Security Administration  REGIONAL CHIEF COUNSEL
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This action stems from an application for disability insurance benefits filed with the Social Security Administration by plaintiff Brenda Osborne Pavia, who claims to be disabled as a result of a back condition and nerve damage in her left arm.  Plaintiff has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of a determination by the Commissioner denying her application for benefits. In support of her challenge to the agency's findings Pavia maintains that the conclusion that she was not disabled at the relevant times, and is therefore not entitled to the benefits she seeks, 1) overlooked other conditions presenting further limitations to her ability to perform work functions, including headaches, a thoracic spinal condition, and obesity, 2) was based upon a residual functional capacity ("RFC") determination that is not supported by the record, 3) failed to take into account her prior good work history, and 4) resulted in part from an improper rejection of her subjective testimony as not fully credible.

Having carefully reviewed the record now before the court in light of the plaintiff's arguments, and applied the requisite deferential standard of

review, I have concluded that the Commissioner's determination is not supported by substantial evidence, and therefore recommend that it be set aside.

I.    BACKGROUND

Plaintiff was born in June 1959; at the time of the hearing in this matter, held on December 19, 2006, she was forty-six years old. Administrative Transcript at pp. 26, 55, 102, 115.[1]  The plaintiff is divorced, has no children, and lives alone in Liverpool, New York.  AT 103. She last attended school in or about June of 1977, having completed the twelfth grade.  AT 27, 124.  Plaintiff is right handed.  AT 26.

Plaintiff was last employed as a sewer maintenance worker for Onondaga County (the "County") from 1993 until on or about April 9, 2006, when she was involved in a motor vehicle accident.  AT 26, 120. Prior to 1993 plaintiff worked for approximately twelve years at the Onondaga County Sheriff's Department garage.  AT 28.   In her position as a sewer maintenance worker, plaintiff was required to perform manual labor that involved lifting eighty-five pound sewer manhole covers,

---

[1]      Portions of the administrative transcript, which was filed by the Commissioner in this action, Dkt. No. 8, and is comprised principally of the medical records and other evidence before the agency when its decision was made, will hereinafter be cited as "AT____."

3

assembling and cleaning piping in sewers utilizing heavy machinery, and driving a sewer truck.  AT 27-28; *see also* AT 120.  Plaintiff's work responsibilities for the County required her to be on her feet approximately eight hours each day.  *See* AT 120.

Plaintiff was treated for the injuries suffered in her 2006 motor vehicle accident at the St. Joseph's Hospital Emergency Department.  AT 181-85.  There she complained of headaches and some neck pain, but denied experiencing any loss of consciousness.  AT 181.  Plaintiff was diagnosed as suffering a contusion from the motor vehicle accident and advised to follow-up with her primary physician.  *Id.*

On August 9, 2006, plaintiff sought treatment from Dr. Daniel J. Murphy, an orthopedic surgeon, complaining of bilateral hand and wrist pain.  AT 217.  Electrodiagnostic testing of the plaintiff confirmed the existence of right and left carpal tunnel syndrome as well as left cubital tunnel syndrome, for which Dr. Murphy recommended surgical releases.  *Id.*  AT 217.

Plaintiff subsequently underwent surgery on September 14, 2006 by Dr. Murphy, who performed a left carpal tunnel release and a left anterior transposition of the ulnar nerve at the elbow.  AT 471.  That surgery was based upon a diagnosis of left carpal tunnel syndrome and left cubital

4

syndrome.  *Id.*

Plaintiff followed that surgery with a regimen of physical therapy extending from November 29, 2006 to January 2, 2007.[2]  AT 203-12.  In a report of a follow-up examination conducted by Dr. Murphy on January 3, 2007, it was reported that while plaintiff continued to experience problems with her neck and back, for which she was being treated by a chiropractor, her incisions were well healed, with some minor tenderness and numbness, and Pavia exhibited full motion in the elbow, with a "[m]ild loss of wrist extension," and good sensation to light touch in the fingers.  AT 213.  Dr. Murphy recommended a home exercise program for the plaintiff, and indicated that her prognosis for return to heavy work was poor based upon her elbow and wrist conditions as well as ongoing back issues.  AT 213.

On March 22, 2007, Elaina A. Pirro-Lombardi, D.C. arranged for the plaintiff to undergo nerve conduction studies at Meridian Chiropractic and Wellness.  AT 326.  The studies done showed plaintiff to have carpal tunnel syndrome and cubital tunnel syndrome.  AT 326.

In a second surgical procedure, Dr. Murphy performed a right

---

[2]     The referral to physical therapy was for the purpose of improving grip strength and range of motion of the left elbow, hand, and wrist.  AT 214.

decompression of the ulnar nerve of the elbow and right carpal tunnel release of the plaintiff's wrist on May 3, 2007.  AT 472.  The second release surgery performed by Dr. Murphy followed nerve conduction studies undertaken on March 22, 2007 by Dr. Pirro-Lombardi, revealing that plaintiff suffered from carpal tunnel syndrome and cubital tunnel syndrome.  AT 326.  In notes regarding follow-up visits, Dr. Murphy wrote that the plaintiff was working on improving her range of motion and grip strengthening, observing her right grip was slightly reduced when compared with her left.  AT 468-470.

Plaintiff's neck and back condition have been treated through both North Medical Family Physicians, where she visits approximately every other week and principally sees Rhonda Museum, a Nurse Practitioner ("NP"), *see* AT 32, 188-203, 379-91, 440, 463-67, and the New York Pain Center, *see* AT 268-91, 373-77, 455-62.  During the course of that treatment Pavia has complained of persistent headaches, cervical spine pain, and pain in her right forearm.  *Id.*  Plaintiff also received weekly chiropractic services from Dr. Pirro-Lombardi between April 2006 and March 2009.  AT 32, 292-364, 441-454, 473-76.

Magnetic Resonance Imaging ("MRI") testing administered on August 2, 2006 of plaintiff's cervical spine revealed a mild concentric disc

6

bulge at C5-6, no impingement of the spinal cord, and a central to left central extruded disc herniation at C6-7, again with no spinal cord impingement.  AT 362-63.  Repeat MRI testing of the plaintiff's cervical spine on March 15, 2007 confirmed the existence of a small disc herniation at C6-7 and a mild bulging disc and degenerative disc disease at C5-6.[3]  AT 438.  Plaintiff has not been recommended for surgery of her cervical spine condition.

Throughout the course of her treatment plaintiff has complained of persistent occipital and temporal headaches, and cervical spine pain, spasms, and tenderness.  *See, e.g.,* AT 188.  Plaintiff was diagnosed on December 14, 2006 by NP Museum with status post left carpal/ulnar nerve disease, cervical spine sprain/bulging disc, and post-traumatic headaches.  *Id.*  Among the medications prescribed over time for the plaintiff to address her various conditions are Topamax, which plaintiff takes daily; Lidoderm patches; Ultram, which plaintiff takes daily; Imitrex, headache medication which plaintiff takes as needed, approximately two times per week; Klonopin, for anxiety; and Effexor.  AT 30-31, 188, 136, 224, 230, 271, 281.  Based upon the MRI results reflecting the existence

---

[3]     An MRI of plaintiff's brain, also conducted on March 15, 2007, was negative.  AT 439.

of degenerative disc disease, in August 2006, Dr. Rina C. Davis, of the

New York Pain Center, developed a treatment plan calling for a left

cervical nerve block at C6-7 and Myobloc trigger point injections for

headaches.  AT 291.  Despite having had a left C6-7 selective

transforminal epideral injection on September 8, 2006, and again on

October 3, 2006, however, plaintiff has experienced no improvement in

her cervical neck pain and headaches.  AT 280, 287, 288.

Plaintiff continued to treat at both the New York Pain Center and

with her chiropractor through 2006 and into the following year, additionally

receiving physical therapy over that time.  In a letter dated January 3,

2007 plaintiff's physical therapist, Beth Colbert, wrote that she had made

steady gains in improving range of motion, postural alignment, and

strength and functioning in her left arm, although acknowledging plaintiff's

reports of ongoing tingling and numbness in her left hand, wrist, and

forearm, as well as her cervical spine issues, and recommended

continued physical therapy for three to four additional weeks.  AT 203.  On

March 12, 2007, plaintiff reported to Dr. Joseph A. Catania, at the New

York Pain Center, experiencing no change in her symptoms but

complained of the side effects of the Topamax prescribed for her.  AT

280-81.   Plaintiff's nerve blocks were deferred, and the Topamax was

discontinued and replaced with Ultram. *Id.* Plaintiff was encouraged to stretch and exercise as much as could be tolerated and was directed to return for follow-up in six to eight weeks. *Id.*

During a later visit to the New York Pain Center, on May 7, 2007, plaintiff again reported experiencing ongoing pain, without change. AT 278-79. Notes from that visit reflect that the plaintiff was to be scheduled for a right cervical facet block procedure in July 2007 in order to help relieve the pain associated with her headaches. *Id.* During a follow-up appointment at the New York Pain Center in August of 2007, Pavia reported that the block procedure, which was undertaken on July 17, 2007, had helped her with her headaches and her neck pain. AT 276-77. A right cervical facet radio frequency procedure performed on August 28, 2007 also reportedly diminished plaintiff's pain level. AT 274-75. During a visit to the Pain Center on January 4, 2008, plaintiff reported that the right cervical facet radio frequency procedure with IV conscious sedation under fluoroscopy seemed to be most effective, affording her up to four months of reduction in pain. AT 272-3. On March 3, 2008, however, plaintiff reported that cervical radio frequency procedure performed on January 25, 2008 had afforded her "little to no relief." AT 270.

Plaintiff continued to report regularly to Dr. Pirro-Lombardi that she

9

was experiencing neck pain and headaches, with some improvement, and on many occasions said to be "under control", from March 2007 through June 2008.  AT 292-325.  Plaintiff also continued to treat with NP Museum through January 2009 for her headaches, cervical spine and neck pain, and arm pain.  AT 379-436.  On February 27, 2008, for example, Pavia reported experiencing ongoing cervical spine pain and post-traumatic headaches.  AT 380.  Pavia was advised to continue chiropractic and pain treatment and was prescribed Ultram, a Lidoderm patch, and Klonopin. AT 380.

In January 2007, plaintiff underwent consultative examinations by both Kristen Barry, Ph.D., to address her mental status, and Dr. Berton Shayevitz, to assess any physical conditions.  AT 224-28, 229-35.  The report submitted by Dr. Shayevitz, following that examination, is largely unremarkable, concluding that plaintiff is between moderately and markedly limited in use of her hands and arms, including in lifting, grasping, holding, pulling and pushing, and additionally noting that her pulmonary condition required her to avoid triggering substances.[4]  AT 233. In her evaluation, Dr. Barry rendered an Axis I diagnosis of adjustment

---

[4]     Among the conditions from which plaintiff suffers is asthma, necessitating her use of an inhaler.  AT 33-34.  Plaintiff does not urge that condition as imposing any work-related limitations relevant to the disability inquiry beyond that noted by the administrative law judge.

disorder with mixed anxiety and depressed mood, concluding that

notwithstanding her mental condition Pavia is capable of following and

understanding simple directions and instructions, can maintain attention

and concentration, and is an intelligent individual who has been able to

perform complex tasks independently.   AT 227.  Dr. Barry did, however,

note difficulty in plaintiff coping with stressors and some "depressive

symptomology", but indicated that overall she has the ability of relating

well with others in making appropriate decisions.  *Id.*

Plaintiff was also consultatively examined by Dr. Shirley J. Cirrillo on

October 2, 2008, for the purpose of determining her eligibility for New York

State retirement benefits.  AT 367-72.  Based upon her examination Dr.

Cirillo, a neurologist, concluded that Pavia suffers from carpal tunnel

syndrome and lesion of the ulnar nerve, and found her not to be

permanently disabled, concluding that she is not precluded by her medical

conditions from performing the duties of her former position as a sewer

maintenance worker.  AT 371.  While Dr. Cirillo's report references

plaintiff's cervical spine condition, she did not have available to her the

films of the MRI conducted on August 2, 2006, and did not address the

impact of that condition, or for that matter of plaintiff's headaches, upon

her ability to perform her past relevant work.  *Id.*

11

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff filed an application for disability insurance benefits on December 19, 2006, alleging the existence of an ongoing disability with an original onset date of April 9, 2006.  AT 102-04.  In support of her application plaintiff claimed that she was disabled and unable to work based upon a back disc condition and nerve damage in her left arm.  AT 119.  Following the denial of that application on March 23, 2007, *see* AT 58-61, a hearing was conducted, at plaintiff's request, before ALJ Marie Greener on April 30, 2009 to address her claim for benefits.  AT 21-50. ALJ Greener subsequently issued a decision on June 1, 2009, in which she found that plaintiff was not disabled at any time between December 19, 2006, the date of her application, and the time of the decision.  AT 9-20.

In her decision, ALJ Greener recounted her *de novo* review of the record evidence, applying the now-familiar, five step prescribed test for evaluating claims of disability.  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since the date of her application for SSI benefits.  AT 11.  With that step satisfied, ALJ Greener proceeded to step two, where she found plaintiff suffers from two

12

impairments qualifying as severe – including a cervical spine disorder and carpal tunnel syndrome.[5]  AT 11.  She went on to conclude at step three, however, that those impairments do not meet or medically equal any of the listed, presumptively disabling impairments included in 20 C.F.R. Pt. 404, Subp. P, App. 1, either singly or in combination.  AT 15.

Before proceeding to step four, the ALJ surveyed the record and concluded that despite her medical conditions plaintiff retains the RFC to perform more than a full range of sedentary work.[6]  AT 15.  In making that finding the ALJ rejected plaintiff's testimony concerning pain as not fully credible, noting that while she does suffer from medically determinable

---

[5]    The ALJ also considered but rejected other claimed impairments, including plaintiff's headaches and adjustment disorder, concluding that they do not qualify as severe since they impose only minimal functional limitations upon plaintiff's ability to perform work functions.  AT 14-15.  Plaintiff does not appear to challenge the ALJ's finding to the effect that her mental condition does not qualify as severe, at step two, or impose significant limitations eroding the job base upon which the medical-vocational guidelines contained within the regulations are predicated.

[6]    Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  See Social Security Ruling 83-10.

impairments that could reasonably be expected to cause the level of symptomology to which she testified, her statements concerning the intensity, persistence and limiting effects of those symptoms were not supported by evidence in the record.  AT 15-18.

After determining at step four that plaintiff does not have the ability to perform any past relevant work, the ALJ proceeded to step five where, in reliance upon the medical-vocational guidelines (the "grids") set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, considering plaintiff's RFC, age, education, and work experience, she concluded that a finding of "non-disabled" was warranted, applying Grid Rule 202.21.  AT 19-20.  The ALJ's opinion became the final determination of the agency on June 1, 2010, the date on which plaintiff's request for review of the decision by the Social Security Administration Appeals Council was denied.  AT 6-8.

B.    This Action

Having exhausted her administrative remedies within the agency, plaintiff commenced this action on July 7, 2010.  Dkt. No. 1.  Issue was thereafter joined on November 9, 2010 by the Commissioner's filing of an answer, accompanied by an administrative transcript of the evidence and proceedings before the agency.  Dkt. Nos. 7, 8.  With the filing of plaintiff's brief on December 27, 2010, Dkt. No. 10, and that on behalf of the

14

Commissioner on February 24, 2011, Dkt. No. 12, the matter is now ripe

for determination, and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[7]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Scope of Review

    A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

---

[7]        This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and subsequently amended and reissued by Chief District Judge Frederick J. Scullin,
Jr., on September 12, 2003.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment on
the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the

correct legal standards have been applied and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision should withstand judicial scrutiny regardless of whether the

reviewing court might have reached a contrary result if acting as the trier

of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998)

(Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

     The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated

Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at

148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235;

*see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

      B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* at

§§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed,

then the second step involves an examination of whether the claimant has

a severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* at §§ 404.1520(c), 416.920(c).  If the claimant is found to

suffer from such an impairment, the agency must next determine whether

it meets or equals an impairment listed in Appendix 1 of the regulations.

*Id.* at §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.

If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp.

2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20

C.F.R. §§ 404.1520(d), 416.920(d).

   If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it

is determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* at §§ 404.1520(f),

416.920(f).

   The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

>      C.      The Evidence in This Case

In support of her challenge to the Commissioner's decision, plaintiff offers three principal arguments.  First, she contends that the ALJ erred at step two of the sequential evaluation process by failing to find that her headaches, thoracic spine condition, and obesity are severe impairments. Next, plaintiff argues that the ALJ's RFC finding is not supported and that the need for the ALJ to rely upon the opinions of non-treating experts resulted from his failure to develop the record and to obtain information from treating sources concerning the limitations imposed by her conditions.  Lastly, plaintiff maintains that the Commissioner's decision fails to take into consideration her good work history and results from a flawed determination finding her testimony regarding her limitations to be less than fully credible.

>      1.      Existence of Severe Impairments

The governing regulations provide that

> [a]n impairment or combination of impairments is
> not severe if it does not significantly limit
> [claimant's] physical or mental ability to do basic
> work activities.

20 C.F.R. § 404.1521(a).  That section goes on to describe what is meant

by the phrase "basic work activities", defining that term to include "the

abilities and aptitudes necessary to do most jobs."  *Id.* at § 404.1521(b).

It is true, as plaintiff has argued, that the second step requirement is

*de minimis*, and intended only to screen out the truly weakest of cases.

*Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Baneky v. Apfel*, 997

F. Supp. 543, 545-46 (S.D.N.Y. 1998).  However, the "mere presence of a

disease or impairment, or establishing that a person has been diagnosed

or treated for a disease or an impairment" is not, by itself, sufficient to

establish a condition as severe.  *Coleman v. Shalala*, 895 F. Supp. 50, 53

(S.D.N.Y. 1995).

At step two an ALJ is not required to comment on every non-severe

impairment and may continue, without error, through the remaining steps

without doing so.  *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007);

*Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th

Cir.1987); *Cook v. Astrue*, No. 08–CV–1351, 2011 WL 2490996, at *4

(W.D.N.Y. May 24, 2011), *report and recommendation adopted*, 2011 WL

2471300 (W.D.N.Y. Jun. 22, 2011) .  However, a decision is vulnerable to challenge when the ALJ omits an impairment at the second step and then also fails to consider the effects of that impairment in the succeeding steps, leaving the decision without substantial support in the record. *See, e.g., Resendes v. Astrue*, 780 F. Supp. 2d 125, 137 (D.Mass. 2011) (mere implication that a plaintiff's headaches imposed no limitations was not sufficiently clear); *Cobbins v. Comm'r of Soc. Sec.*, No. 09-CV-1305, 2012 WL 966072 (N.D.N.Y. Mar. 1, 2012) (Bianchini, M.J.) (no reversible error found when non-severe impairments were not considered in step two, but factored into the ALJ's subsequent evaluation), *report and recommendation*, 2012 WL 960939 (N.D.N.Y. Mar. 21, 2012).

The portion of plaintiff's argument regarding obesity as a severe impairment can be swiftly discounted.  It is true there is at least some modest support in the record suggesting that plaintiff suffers from moderate obesity.  *See, e.g.,* AT 181, 268; *see also* AT 280, 373 (heavy set), 376 (heavy set), 377 (heavy set to obese female), 461 (heavy set–to–obese ).  The mere presence of a disease or impairment alone, however, is insufficient to establish disability; instead, it is the impact of the disease, and in particular any limitations it may impose upon the claimant's ability to perform basic work functions, that is pivotal to the

disability inquiry.  *See Rivera v. Harris,* 623 F.2d 212, 215-16 (2d Cir.

1980); *Coleman,* 895 F. Supp. at 53.

Undeniably, when considering whether a claimant's impairment

meets or equals one or more of the conditions listed in the regulations,

that person's obesity and its effects in combination with musculoskeletal

impairments must be considered in the context of the specifics of the

claimant's circumstances.[8]  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, §

1.00(Q); *see also* SSR 02-1p; *Orr v. Barnhart,* 375 F. Supp. 2d 193, 199

(W.D.N.Y. 2005).  As the regulations observe,

> [o]besity is a medically determinable impairment
> that is often associated with disturbance of the
> musculoskeletal system, and disturbance of this
> system can be a major cause of disability in
> individuals with obesity.  The combined effects of
> obesity with musculoskeletal impairments can be
> greater than the effects of each of the impairments
> considered separately.  Therefore, when
> determining whether an individual with obesity has
> a listing-level impairment or combination of
> impairments, and when assessing a claim at other
> steps of the sequential evaluation process,
> including when assessing an individual's residual
> functional capacity, adjudicators must consider any
> additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q).

---

[8]    Obesity in and of itself was eliminated as a listed disability in October of 1999.  *See* Social Security Ruling 00-3p.  Its description as a potential contributing factor is now referenced in section 1.00(Q) of the listings.

In this instance, plaintiff did not list obesity as a contributory factor to her inability to work in support of her application for benefits, nor did she testify regarding any limitations associated with her obesity at the hearing in this matter. Moreover, there is no indication in the record that plaintiff has ever sought or received treatment for obesity, or that the condition imposed any limitation that could be regarded as work-related. Indeed, any claim that plaintiff's obesity poses limitations on her ability to work is belied by her work history. Notwithstanding that condition, plaintiff worked over many years as a sewer maintenance worker. AT 27, 28. In that position, she lifted manhole covers, assembled and cleaned piping in the sewer with heavy machinery, and drove a sewer truck. *Id.* While overweight, she performed these duties without complication for forty hours a week before the accident. AT 120. In sum, I find that the ALJ's conclusion that plaintiff's obesity does not serve as an impediment to her performance of basic work activities is well-supported by substantial evidence in the record.

Plaintiff also contends that she suffers from thoracic spine condition qualifying as severe. However, there is no documented evidence in the record to show that plaintiff suffers from such a condition separate and apart from her diagnosed cervical degenerative disc disease, with a

herniated disc at C6-7 and a disc bulge at C5-6.  At step two the burden is

upon the plaintiff to satisfy its requirements.  *Butts v. Barnhart*, 388 F.3d

377, 383 (2d Cir. 2004).  Plaintiff has offered nothing, other than a vague

diagnosis of NP Museum, unsupported by any empirical medical results,

suggesting a thoracic disc herniation.[9]  It therefore was not error for the

ALJ to reject this condition as potentially severe for purposes of step two

of the disability algorithm.

        More troublesome is the ALJ's step two rejection of plaintiff's claims

of debilitating headaches.  It is true that when asked concerning her

medical conditions, plaintiff did not identify headaches as "the illness,

common injuries, or conditions that limit [her] ability to work[.]" AT 119.

Nonetheless the record is replete with references to plaintiff's headache

complaints and efforts of treating sources to address that condition.

During the hearing in this matter plaintiff testified that she suffers from

frequent headaches, occasionally causing her to experience sensitivity to

---

        [9]        It appears fairly plausible that the reason why plaintiff's thoracic spine
pain is not addressed in her medical records stems from her confusion over whether
her pain was emanating from the thoracic spine region or instead the lower portion of
her cervical spine.  While NP Museum appears to have diagnosed plaintiff in April
2009 as suffering from a herniated disc in the thoracic spine area, *see* AT 463, there is
no medical evidence in the record, including MRI testing, that identifies a herniated
disc at that level.  Since the herniation is actually identified through MRI testing to be at
the C6-7 level, at the lowest portion of the cervical spine, it is entirely likely it has been
confused by the plaintiff and NP Museum as falling within the thoracic spinal area.

light and requiring her to lie down and nap in order to address them, and that the headaches preclude her from performing work functions. *E.g.,* AT 31, 46-48.   At step two, sufficient evidence existed in the record to conclude that plaintiff's headaches were sufficiently severe to meet the modest test imposed at that stage of the analysis.  The ALJ's finding to the contrary was in error.

As was noted above, this error does not necessarily require a reversal.  By regulation an ALJ is required to consider any medically determinable impairment that could affect a claimant's residual functional capacity in the later steps of the analysis – even those found not to be sufficiently severe at step two.  *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'. . . when we consider your residual functional capacity.") Accordingly, so long as the plaintiff's headaches and any work-related limitations associated with them were considered at later stages in the sequential analysis, the failure to include them at step two was harmless. *Swan v. Astrue*, No. 09-CV-584 (DNH/VEB) (N.D.N.Y. Jan. 24, 2011) (Bianchini, M.J.) at pp. 10-11 (citing *Mariarz,* 837 F.2d at 244); *see also McCartney v. Comm'r of Social Sec.*, No. 07-1572, 2009 WL 1323578, at

26

*16 (W.D. Pa. May 8, 2009).

It is clear that when arriving at her RFC determination the ALJ took into account plaintiff's headaches.  *See* AT 17-18.  In the end, however, she rejected the plaintiff's testimony regarding her headaches as not entirely credible – a matter which is the subject of another point of contention in this matter.  Under these circumstances, the ALJ's failure to include headaches at step two of the disability analysis was harmless.

2.    The ALJ's RFC Analysis and the Treating Physician Rule

The foundation for the ALJ's finding of no disability is her conclusion regarding plaintiff's RFC.  The ALJ concluded that despite her condition plaintiff is able to lift and carry ten pounds occasionally and less than ten pounds frequently, to stand or walk for six hours in an eight hour work day, with usual breaks, and to occasionally use her hands and arms to lift, grasp, hold, push and pull, and frequently use her hands for fine manipulation such as feeling and fingering, and should not be subject to concentrated exposure to respiratory limitations.  AT 15.  Plaintiff maintains that this RFC determination is not supported by substantial evidence in the record.  Specifically, plaintiff alleges that she was prejudiced by the ALJ's failure to fully develop the record by failing to obtain opinion evidence from her treating physicians and her exclusive

27

improper reliance upon the opinions of state agency consultative examiners.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R.  §§ 404.1545(a), 416.945(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *Crysler v. Astrue*, 563 F. Supp. 2d 418, 435 (citing *Martone*, 70 F. Supp. 2d at 150).

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R.  §§ 404.1545(b), 404.1569(a).  Nonexertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered.   20 C.F.R. §§ 404.1545(b), 404.1569(a); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2  § 200.00(e).

When the available medical evidence is generally consistent and a decision can be made regarding a claimant's disability, the ALJ may make a decision based on that evidence.  20 C.F.R. § 404.1527(c)(1).  If there are inconsistences, however, the ALJ will weigh the evidence to determine

the plaintiff's disability.  20 C.F.R. § 404.1527(c)(2).  Only when the ALJ is

unable to make a determination will it became necessary to recontact the

medical sources.  *See* 20 C.F.R. § 404.1527(c)(3).

Among the evidence considered by the ALJ in arriving at her RFC

determination are opinions from plaintiff's treating medical care providers.

In an ALJ's assessment, a treating physician's opinion is ordinarily entitled

to "controlling weight" when it is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with

substantial evidence in [the] record." C.F.R. § 404.1527(d)(2).  However,

an ALJ is also entitled to rely upon the opinions of non-examining State

agency medical consultants, provided that they are consistent with the

record as a whole.  *See O'Grady v. Comm'r of Soc. Sec.*, No. 09-CV-

1121, 2011 WL 3652432, at *6 (N.D.N.Y. July 5, 2011) (Bianchini, M.J.),

*report and recommendation adopted*, 2011 WL 3652427 (Suddaby, J.);

*Leach ex rel. Murray v. Barnhart*, No. 02 Civ.3561, 2004 WL 99935, at *9

(S.D.N.Y. Jan. 22, 2004).  Though he or she may rely upon the State

consultants, an ALJ may only decline to consider the treating physician's

opinion as controlling if able to set forth good reason for doing so.  *Saxon*

*v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (internal citation

omitted); *see Peralta v. Barnhart*, No. 04-CV-4557(JG), 2005 WL

1527669, at *10 (E.D.N.Y. 2005) (case remanded because ALJ failed to explain weight assigned to treating physician's opinion).

The ALJ's RFC determination is not directly contradicted by opinions of plaintiff's treating sources.  None of plaintiff's treating doctors have rendered opinions demonstrating that plaintiff suffers a limitation in her ability to walk, stand, or sit.  In addition Dr. Cirrillo, a consulting neurologist, stated that despite plaintiff's impairments she is capable of performing her past work as a sewer maintenance worker.  AT 371.  An examination conducted by Dr. Cirrillo on August 2, 2008 reflected full or near full strength in plaintiff's upper extremities and 5/5 muscle strength in major lower extremity groups.  AT 370.

Similar findings were reported over time by doctors at the New York Pain Center as well as plaintiff's treating orthopedic surgeon, Dr. Murphy. On June 21, 2006, Dr. Murphy wrote that plaintiff could return to work on July 12, 2006, with a twenty pound weight restriction for one month, a restriction greater than the maximum lifting limit included in the ALJ's RFC's determination.  AT 220.  The results of an examination performed at the New York Pain Center in March of 2007 revealed that plaintiff had strong and equal bilateral hand grips, and was advised to do as much walking as possible for exercise.  AT 281.  In August 2008, professionals

at the New York Pain Center wrote that plaintiff's bilateral hand grips were strong and equal in her right and left upper extremities.  AT 277.

Plaintiff maintains that the ALJ should have developed the record by contacting plaintiff's treating sources soliciting more information.  It should be noted, however, that if medical evidence is generally consistent with a decision, and a determination can be made regarding disability based upon an existing record, the issue of disability can be made based upon the evidence presented.  20 C.F.R. § 404.1527(c)(1).  It is only if there are inconsistencies that the ALJ must weigh the evidence to determine disability.  20 C.F.R. § 404.1527(c)(2).  If, after weighing the evidence, the ALJ is unable to make a determination then medical sources should be contacted for the submission of additional evidence.  20 C.F.R. § 404.1527(c)(3).

In this instance, the record contains no significant gap in plaintiff's medical history.  Specifically, orthopedic surgeon Dr. Murphy and those practicing in the New York Pain Center,[10] all treating physicians, have provided opinions regarding the plaintiff's physical state.  *See* AT 220. The ALJ considered those opinions in her step two and step four

---

[10]     The physicians treating the plaintiff at the Center have included Dr. Robert L. Tiso, Dr. Joseph A. Catania, Dr. Rina C. Davis, and Dr. Eric A. Tallarico. *See* AT 268-80, 289-91, 373-77.

analyses.  AT 12-14, 17, 18.  By addressing the opinions of treating

physicians throughout her analysis in conjunction with consultative

opinions, the ALJ properly assessed plaintiff's full record in her

determination, and there was no need for recontact.[11]  *See* 20 C.F.R. §§

404.1545(e).

In making her RFC finding the ALJ properly assessed the record as

a whole and accepted the opinions of non-examining State agency

medical consultants for her consideration.  Though certain differences

existed in the record, the treating and consultative physicians' opinions as

a whole were consistent in affixing plaintiff's ability to sit, stand, lift, grip,

carry, and walk.  *Compare* AT 215, 220, 277, 281, 290-91 *with* 367-69,

371-72.  With relative consistency in the record between treating and

consultative physicians, the ALJ was within her ability to give controlling

weight to the opinion of the State consultative physicians.

Finally, plaintiff argues that it was reversible error for the ALJ to

accord "some limited weight" to the views of a State agency disability

examiner.  Plaintiff cites the Programs Operations Manual System

("POMS") and the SSA's own policies.  However, POMS guidelines have

---

[11]     Though only two of eight pages were present from a report by Dr. Lombardi, the portion of the document included in the record contain his diagnosis, and the fact of the missing pages is therefore considered to be harmless error.  AT 186-187.

no legal force and do not bind the Commissioner in making his decision. *Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S. Ct. 1468 (1981)).  Moreover, the disability examiner's determination was in fact less restrictive than the ALJ's findings.  AT 17.  It was not error to give some non-medical weight to the State disability examiner.  *See Crysler*, 563 F. Supp. 2d 418 (The court analyzed the views of the State's disability examiner against those of nurse practitioner's opinion without error).

### 3. Plaintiff's Credibility

The last point raised in support of her challenge to the ALJ's finding of no disability concerns the rejection of her claims of disabling pain as not being fully credible.  *See* AT 18.  That rejection was based principally upon the lack of supporting medical evidence reflecting the existence of a condition that could reasonably be expected to result in limitations testified to by the plaintiff in her daily activities.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment that one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[12]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence, or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ

---

[12]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment that would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency, and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; 6) other measures taken to relieve symptoms; and 7) any other factors concerning functional limitations and restrictions due to the symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(i)-(vi).  The ALJ should also consider other factors, such as the claimant's prior work history.  SSR 96-7p; *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of disability.").

    After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human*

*Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

In her decision the ALJ concluded that plaintiff's medically

determinable impairments could reasonably be expected to cause the

symptoms to the extent alleged.  AT 18.  The ALJ failed, however, to fully

assess plaintiff's subjective complaints, applying the seven factors listed

in 20 C.F.R. § 404.1529(c)(3).  Specifically, the ALJ did not indicate what

factors led her to conclude that plaintiff's claims were inconsistent with the

record, instead only reciting portions of the medical treatment and

testimony when making her determination.  AT 17-18.   From this

recitation it appears that the ALJ summarily discounted plaintiff's

subjective complaints due to their inconsistency with the medical evidence

and the opinions of examining medical providers.  AT 18.  In listing seven

factors for an ALJ to consider, 20 C.F.R. § 404.1529(c)(3) requires a more

comprehensive analysis of plaintiff's subjective account.  *Johnson v.*

*Astrue*, 748 F. Supp. 2d 160, 174 (2010).   An ALJ's undocumented

assertion that an account is not credible because it conflicts with the

record is insufficient to permit a court to engage in a meaningful review,

36

and requires remand.  *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.

1982).

Also of concern is the ALJ's apparent failure to consider plaintiff's

excellent work history when evaluating her claim of being unable to work.

Though not necessarily determinative in and of itself, plaintiff's

uninterrupted twenty-five year history should properly factor into the

credibility assessment.  *Rivera*, 717 F.2d at 725; *Singletary v. Sec'y of*

*Health, Ed. & Welfare*, 623 F.2d 217, 219 (2d Cir. 1980) (prior work history

justifies the inference that when a plaintiff stopped working he did so for

the reasons testified to).

Based upon the ALJ's failure to properly address plaintiff's pain

complaints, I recommend that the Commissioner's determination be set

aside, and the matter returned to the agency for further consideration.  On

remand, the ALJ should provide a more thorough explanation for her

assessment of plaintiff's credibility and its effect on her RFC finding.[13]

    4.    <u>Scope of Remand</u>

---

[13]    The error of the ALJ in failing to properly address plaintiff's pain complaints is particularly acute in this case since the finding of no disability was made based upon application of the grids.  It is well-accepted that pain is a non-exertional limitation which, under appropriate circumstances, can sufficiently erode the job base upon which the grids are predicated to warrant the eliciting of vocational expert testimony to address the ultimate issue of disability. *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

Having concluded that the Commissioner's determination was infected with fatal error, the next issue to be addressed is the scope of the remand to be ordered by the court.  Section 405(g) of the Social Security Act provides for two types of remands: remands pursuant to sentence four of that section, and those pursuant to sentence six.  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 97-98, 111 S. Ct. 2157, 2163 (1991) (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 623-27, 110 S. Ct. 2658, 2662-66 (1990)). Sentence four provides that:

> [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).  As this language plainly suggests, sentence four contemplates the entry of judgment upon the pleadings, as well as based on a transcript of the record below.[14]

─────────────────────

[14]     Sentence six of section 405(g), by contrast, provides that:

> [t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and

In certain instances the directed finding of disability, solely for calculation of benefits, is appropriate, including "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose."  *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72,  83 (2d Cir. 1999)).  Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision.  *See Rosa,* 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).

In this instance, remand is required for the purpose of making further findings and offering additional explanations of the evidence, and

---

after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

*Id.*  Sentence six, then, contemplates remand in one of two situations – where the agency requests remand before answering the complaint ("clause one"), or where new, material evidence is presented that was for good cause not presented before the Administration ("clause two").  *Id.*; *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2, 113 S. Ct. 2625, 2629 n.2 (1993) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S. Ct. 2157 (1991)); *Melkonyan*, 501 U.S. at 100 n.2, 111 S. Ct. at 2164 n.2; *Raitport v. Callahan,* 183 F.3d 101, 104 (2d Cir. 1999); *Medina v. Apfel,* No. 00 CIV. 3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001).   This case presents neither of these situations.

not because of a finding that there is persuasive proof of disability in the existing record.

IV.    SUMMARY AND RECOMMENDATION

Much of the ALJ's decision in this case reflects the application of proper legal principles, and contains findings that are well-supported.  The ALJ properly rejected plaintiff's claimed obesity and thoracic – as opposed to cervical – spine degeneration as severe impairments at stage two. And, although plaintiff's headaches were improperly rejected as not being sufficiently severe to meet the modest test imposed under step two of the progressive disability analysis, that error was potentially harmless.

The more serious issue in this case concerns the ALJ's handling of the matter at the RFC stage, and specifically the rejection of plaintiff's claims of disabling pain, including her well-chronicled history of headaches.  In this regard, the ALJ failed to make a meaningful assessment of plaintiff's credibility, thereby depriving the court of an opportunity to review that determination for sufficiency.  In light of this error, I recommend that the Commissioner's determination be reversed and the matter remanded to the agency for further consideration.

It is therefore hereby, respectfully

RECOMMENDED that plaintiff's motion for judgment on the

pleadings be GRANTED, and the Commissioner's determination of no disability be VACATED, and the matter be REMANDED to the agency for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      August 20, 2012
            Syracuse, NY

41